[No. B001827. Second Dist., Div. Five. June 4, 1984.]

In re the Marriage of SHELLY ANN and ROGER GENE STEPHENS.
SHELLY ANN STEPHENS, Respondent, v.
ROGER GENE STEPHENS, Appellant;
GENERAL DYNAMICS CORPORATION, Appellant.

**COUNSEL**

Shirley & Shirley and Stephen M. Shirley for Appellant Husband.

Andrew D. Rose for Appellant General Dynamics Corporation.

No appearance for Respondent.

OPINION

ASHBY, J.—In the course of a marriage dissolution proceeding the husband, appellant Roger Gene Stephens (Husband), served upon the wife's employer, appellant General Dynamics Corporation (General Dynamics), a subpoena duces tecum for payroll records of the wife's earnings in 1981 and the first six months of 1982. In compliance with the subpoena, General Dynamics supplied a four-page document consisting of a copy of the employee's 1981 W-2 form and a copy of a three-page computer printout of the employee's wages and deductions for January to June 1982.

■ Pursuant to Evidence Code section 1563, General Dynamics requested from Husband its costs of compliance with the subpoena, in the amount of $45.40, which consisted of $.40 for copying at $.10 per page, $5 for clerical time of one-half hour at $10 per hour, and $40 for "computer costs."

Pursuant to section 1563, subdivision (b)(4), Husband petitioned the superior court for a reduction of the charges, contending there is no provision in the statute for recovery of computer costs. General Dynamics submitted its response. Both parties also requested that in the event they prevailed they be awarded their reasonable expenses and attorney's fees incurred in connection with the petition.

The trial court denied Husband's petition to reduce the fees, finding that the $40 computer charge was allowable under the statute. The court declined, however, to award attorney's fees to General Dynamics. Both Husband and General Dynamics have appealed the trial court's order.

■ At issue is interpretation of Evidence Code section 1563, subdivision (b)(1), which provides: "(b) All reasonable costs incurred in a civil proceeding by any witness which is not a party with respect to the production of all or any part of business records the production of which is requested pursuant to a subpoena duces tecum may be charged against the party serving the subpoena duces tecum. [¶] (1) 'Reasonable costs,' as used in this section, shall mean ten cents ($.10) per page for standard reproduction of documents of a size of 8½ by 14 inches or less, and actual costs for reproduction of oversize documents or documents the reproduction of which require special processing, necessarily done in responding to the subpoena together with additional reasonable clerical costs incurred in locating and making the records available. The clerical costs may be billed at the rate of ten dollars ($10) per hour per person, computed on the basis of two dollars and fifty cents ($2.50) per quarter hour or fraction thereof, and actual costs,

if any, charged to the witness by a third person for retrieval and return of records held by such a third person."

General Dynamics contends that subdivision (b) constitutes a general allowance of all reasonable costs and that subsection (1) merely limits the amounts recoverable for the specific costs listed in that subsection. Husband contends that subsection (1) defines the term "reasonable costs" used in subdivision (b) and that therefore the only costs recoverable are those which fall within the categories mentioned in subsection (1).

Husband's interpretation is clearly supported by the language of the statute. While subdivision (b) opens with language that "All reasonable costs" incurred may be charged, subsection (1) states " 'Reasonable costs,' *as used in this section, shall mean . . . .*" (Italics added.) This is language of definition rather than limitation or qualification. It shows that subsection (1) defines the term used in subdivision (b). ■ The Legislature has power to prescribe legal definitions of its own language, and when an act passed by the Legislature embodies a definition it is binding on the courts. (*Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 354 [62 Cal.Rptr. 364].) Terms defined by the statute in which they are found will be presumed to have been used in the sense of the definition. (*Application of Monrovia Evening Post* (1926) 199 Cal. 263, 270 [248 P. 1017].)

However, even assuming that the statutory language is ambiguous, we find nothing in its historical background which is persuasive of General Dynamics' interpretation. (See *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 207 [114 P.2d 592]; *People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 626 [126 Cal.Rptr. 505].)

Under prior law, there was no provision entitling a nonparty witness served with a subpoena duces tecum to be reimbursed for the expenses of complying with the subpoena. Compliance, even at considerable inconvenience and expense, was a burden of all persons subject to the court's subpoena powers. (See *United States* v. *International Business Machines Corporation* (S.D.N.Y. 1976) 71 F.R.D. 88, 92.) If the burden of compliance was oppressive, however, a nonparty witness could seek a protective order under Code of Civil Procedure section 2019, subdivision (b)(1), which empowered the court "[To] make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression. In granting or refusing such order the court may impose upon either party or upon the witness the requirement to pay such costs and expenses, including attorney's fees, as the court may deem reasonable." (2 Hogan, Modern Cal. Discovery (3d ed. 1972) § 7.08, pp. 25-28; Grossman & Van Alstyne, 14 Cal. Practice (1972) § 675, p. 141; *United States* v. *Columbia Broad-*

*casting System, Inc.* (9th Cir. 1982) 666 F.2d 364, 371-372 [reviewing federal cases under the analogous rule 45(b) of the Federal Rules of Civil Procedure, 28 U.S.C.; witnesses sought reimbursement of $2.3 million in costs of compliance].)

Since 1961, a person required to attend a deposition was entitled to receive the same witness fees and mileage as a witness subpoenaed to attend a court session. (Code Civ. Proc., § 1986.5; *DiNapoli* v. *Superior Court* (1967) 252 Cal.App.2d 202, 204 [60 Cal.Rptr. 394].) ■ However, Evidence Code section 1563 is part of a streamlined procedure which enables a custodian of business records to supply the records without having to attend a deposition. (Evid. Code, § 1560 et seq.)[1] Until 1972 there was no provision for a fee or recovery of costs by a custodian of records who used the streamlined procedure. In that year, the Legislature amended Evidence Code section 1563 by adding that in the case of patient records, where the personal attendance of the custodian was not required, "the sole fee for complying with such subpoena is twelve dollars ($12.00)." (Stats. 1972, ch. 396, § 1, p. 719; 4 Pacific L.J. 321 (1973).) The $12 amount was the same as the witness fee then provided for a witness whose personal attendance was required. (4 Pacific L.J. 321, *supra;* Stats. 1972, ch. 396, § 1, p. 719; Stats. 1970, ch. 1061, § 2, p. 1892 [Gov. Code, § 68093].)

A commentator suggested that the distinction between patient and other business records was unjustified, and that section 1563 should be amended to provide the same compensation for expenses incurred in duplication and delivery of all business records. (4 Pacific L.J., *supra,* at pp. 321-322.)

The Legislature did not follow this suggestion precisely but instead, in 1980, enacted former Code of Civil Procedure section 1987.4, the predecessor of the statute under consideration in this case. Former Code of Civil Procedure section 1987.4 provided "All reasonable costs incurred by a custodian of records, or other qualified witness, of a business which is neither a party nor the place where any cause of action is alleged to have arisen, with respect to the production of all or any part of the records of the business pursuant to a subpoena duces tecum may be charged against the party who requested the issuance of the subpoena duces tecum. The custodian, upon demand, shall be paid costs pursuant to this section before being required to deliver the subpoenaed records. 'Reasonable costs' as used in this section, means actual copying costs plus any additional reasonable clerical costs incurred in locating and making the records available. Such additional

---

[1]The streamlined procedure was first provided in 1959 solely for hospital records, then reenacted in the Evidence Code of 1965, and extended to all business records in 1969. (34 State Bar J. (1959) 667-669; 7 Cal. Law Revision Com. Rep. 288 (1965); Review of Selected 1969 Code Legislation (Cont.Ed.Bar 1969) 112-113.

clerical costs shall be based on a computation of the time spent locating and making the records available multiplied by the employee's hourly wage." (Stats. 1980, ch. 830, § 1, p. 2607.)

This approach did not eliminate the distinction between patient records, still governed by the $12 fee in former Evidence Code section 1563, subdivision (b), and other business records governed by former Code of Civil Procedure section 1987.4. In 1981 the Legislature acted to harmonize the provisions by (1) repealing Code of Civil Procedure section 1987.4; (2) reenacting those provisions, as substantially amended, in Evidence Code section 1563, subdivision (b); and (3) eliminating the $12 fee for patient records. (Stats. 1981, ch. 1014, §§ 1.5, 2, p. 3913; 13 Pacific L.J. (1981) 624, 629.) The same legislation enacted the procedure for contesting the validity of the charges. (Evid. Code, § 1563, subd. (b)(2) et seq.) It is this enactment, chapter 1014 of 1981, which we must construe.

First, we note the striking similarity between former Code of Civil Procedure section 1987.4, enacted in 1980, and chapter 1014 enacted in 1981. In chapter 1014, the Legislature did not change the definitional format of the statute. Both versions open with the statement that all reasonable costs incurred may be charged against the party serving the subpoena duces tecum, but then define " 'reasonable costs' as used in this section." ▮ Given the fact that prior to 1980, there was no right to reimbursement of the cost of compliance with the subpoena where attendance at a deposition was not required, except a $12 fee in the case of patient records, there is nothing in the language, history or background of either the 1980 or the 1981 legislation to indicate that the Legislature intended suddenly to make *all* reasonable costs reimbursable, as distinguished from the costs specifically defined in those statutes.

The differences between the 1980 and the 1981 versions are that under the former, reasonable costs meant "actual copying costs" plus "any additional reasonable clerical costs" (computed at the particular employee's hourly wage for the time spent), whereas reasonable costs now means (1) $.10 per page for standard reproduction of documents of the size of 8½ by 14 inches or less; (2) actual costs for reproduction of oversized documents or documents the reproduction of which requires special processing; (3) additional reasonable clerical costs billed at the rate of $10 per hour; and (4) actual costs charged to the witness by a third person for retrieval and return of records held by such third person. The thrust of the legislative changes in 1981 was toward greater consumer protection, uniformity and simplicity of determination. The rate per page for copying and the wage per hour for clerical work are now fixed arbitrarily by the statute. These provisions indicate a concern about possible overcharging. The elaborate pro-

cedures in the new legislation permitting the requesting party to challenge the fees as excessive, and to recover attorney's fees if the charges are determined by the court to have been excessive and in bad faith (Evid. Code, § 1563, subd. (b)(4)) bear the earmarks of consumer protection legislation. Specifying by statute the rate to be charged for copying and clerical work also contributes to simplicity of determination and avoidance of disputes over the reasonableness of costs. General Dynamics' interpretation of the statute opens the door to burdensome involvement of the courts in disputes over the reasonableness of charges. This case is illustrative.

The record in the trial court included affidavits from four General Dynamics employees attempting to explain the basis for the $40 computer charge. These described in some detail how General Dynamics Western Data Services Division charged its Pomona Division, through an internal accounting procedure, for the use of computer time at the rate of $62 per "computer use unit" (which takes into consideration both clerical time and computer time). Requests for payroll information had over a period of time averaged a charge of between $30 and $50, and on that basis a flat fee of $40 was fixed. We note that one of the affidavits describes typical steps in the process of obtaining the records, many of which involve clerical work.[2] There was no showing that these clerical steps were billed at the rate of $10 per hour.

The Legislature was presumably aware in 1980 and 1981 of the use of computers in modern businesses, but did not specifically mention computer use in the statute. The Legislature may well have been unprepared in 1981 to fix a statutory price for computer use, as it had for copying and clerical costs, and unwilling to allow "actual computer costs," as it had for copying oversized documents, in light of the difficulty of determining an appropriate charge.[3]

Finally, General Dynamics seeks support for its interpretation in the legislative counsel's digest to chapter 1014, which states in pertinent part "This bill would . . . provide that all reasonable costs of a witness which is not a party with respect to a subpoena duces tecum of business records may be charged against the party serving the subpoena. It would limit copying costs to $.10 per page for standard documents, and actual costs for oversized documents plus clerical costs as specified." (1981 Summary Digest, pp. 320-321.)　Although a legislative counsel's digest may be helpful in interpreting an ambiguous statute, it is not the law. Where the digest

---

[2]For example, "A distribution clerk picking up a fully prepared request and delivering it to the chief clerk for distribution to a keypunch operator [who] converts the written request into a keypunch request and then passes it to another keypunch operator for verification prior to returning it to the chief clerk for approval before transmittal."

[3]Additional such difficulties are discussed, *infra,* in connection with General Dynamics' claim that its computer costs constituted "third party" costs.

conflicts with the unambiguous language of the statute, or the clear intent of the legislation as shown by its background and history, the digest is not controlling. (*California Teachers' Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606, 614 [193 Cal.Rptr. 650]; *Travelers Insurance Company* v. *Sierra Pacific Airlines* (1983) 149 Cal.App.3d 1144, 1151 [197 Cal.Rptr. 416].) General Dynamics' argument is, in any event, unpersuasive in light of the fact that the legislative counsel also stated in 1980 that the bill which enacted the predecessor statute, former Code of Civil Procedure section 1987.4, "would define reasonable costs." (1980 Summary Digest, p. 240.) In 1981, the Legislature retained the basic definitional format of the statute.

■ Thus, we conclude the trial court erred in holding that Evidence Code section 1563, subdivision (b) allows a nonparty witness to recover all reasonable costs of compliance with a subpoena duces tecum in addition to those costs specified in subsection (1) thereof.[4]

■ We next consider whether, in the alternative, the computer costs charged by General Dynamics fall within any of the specific definitions of subsection (1) of section 1563, subdivision (b). First, General Dynamics argued to the trial court that a computer printout is a "document[] the reproduction of which require[s] special processing" within the meaning of the statute. Such contention is without merit because the legislative history shows that this clause deals solely with copying costs.[5]

In the form in which it was presented, General Dynamics' computer charge may not reasonably be construed as a "clerical" cost within the

---

[4]In 1982, the statute was further amended. It now contains an additional provision that where the personal attendance of the custodian is not required, "the sole fees for complying with such subpoena shall be those provided for in this subdivision, except that where no photocopying or reproduction is performed by the custodian of records or other qualified witness the sole fee for making such records available shall not exceed twelve dollars ($12)." (Evid. Code, § 1563, subd. (b)(6); Stats. 1982, ch. 452, § 3, p. 1826; 14 Pacific L.J. (1983) 484.) The 1982 amendment also clarifies that where the personal attendance of the custodian is required, he is entitled to the same fee and mileage as other witnesses required by a subpoena to testify in court (which is now $35 a day and $.20 per mile both ways pursuant to Gov. Code, § 68093), plus any additional costs incurred as provided in subdivision (b). (Evid. Code, § 1563, subd. (c); Stats. 1982, ch. 452, § 3, p. 1826; 14 Pacific L.J., *supra*, 486-487.)

[5]As amended March 12, 1981, Senate Bill No. 57 allowed $.10 per page for all copying. It was amended April 29, 1981, by deleting "all copying" and substituting the present language, "standard reproduction of documents of the size of 8½ by 14 inches or less, and actual costs for reproduction of oversized documents or documents the reproduction of which require special processing." This amendment came after the California Bankers Association opposed the earlier version on March 16, 1981, stating that the limit of $.10 per page "ignor[es] thereby possibly greater costs for oversized documents, blueprints, computer printouts, etc. . . . There would be no objection to the fixed amount per page if that related solely to standard reproduction of pages up to 8½ by 14 inches, with actual costs allowed for other copying costs."

meaning of the statute. Subsection (1) obviously contemplates a human clerical cost, billed at a rate of $10 per hour "per person." As noted, apparently many of the steps involved in the computer process were clerical, but General Dynamics did not keep track of the time spent by clerks performing those functions on Husband's subpoena, nor show that the time was billed at the statutory rate of $10 per hour.

Finally, General Dynamics strenuously contended that the computer cost was an "actual cost[] . . . charged to the witness by a third person for retrieval and return of records held by such a third person" as specified in the statute. It contended that General Dynamics Data Services Division, Western Data Center Group (San Diego) should be considered a "third person" in relation to General Dynamics' Pomona Division, which received the subpoena. It submitted an affidavit of an accounting supervisor showing that the Data Services Division regularly charged the Pomona Division $62 per computer use unit, which represented Data Services Division's actual cost without profit, and that the charge was handled through interdivisional invoices and resulted in a transfer from the Pomona Division's clearing account in General Dynamics' corporate office in St. Louis, Missouri.

■ A corporation is a person. (Code Civ. Proc., § 17.) There is no suggestion that the Data Services Division is separately incorporated. A "division" of a corporation is a unit within the corporation and has no status as a separate "person" in the eyes of the law. (*Automatic Canteen Co.* v. *Department of Agriculture* (1966) 247 Cal.App.2d 18, 22-23 [55 Cal.Rptr. 857]; 64 Ops.Cal.Atty.Gen. 640, 646-647 and fn. 7 (1981).) Moreover, the purposes of the legislation would better be served if "third person" were interpreted to mean a separate person in the business of record storage and retrieval. The reasonableness of the cost charged by such a person would presumably be established by the competitive market. In addition, the actual cost charged is easily proved by the invoice submitted to the witness by the storage company. The Legislature might believe that no such assurance of reasonableness nor simplicity of proof could be achieved by interdivisional accounting within a single corporation. Some corporations might have fair accounting procedures, and others might not. Moreover, the consumer (requesting party) would be at an unfair disadvantage because the corporate records custodian has employees familiar with internal accounting procedures, of which the requesting party has no knowledge. The cost of expert advice to challenge the interdivisional accounting would exceed the charge being contested.

We conclude, therefore, that neither under the language of subdivision (b) of Evidence Code section 1563, nor the specific language of its subsection (1), was General Dynamics entitled to compensation for the $40 com-

puter costs charged by it. The trial court should have ordered General Dynamics to reduce its charge by $40. (Evid. Code, § 1563, subd. (b)(4).)

■    Husband also requests that his expenses and attorney's fees in litigating this matter be awarded against General Dynamics. Evidence Code section 1563, subdivision (b)(4) provides, in pertinent part, "In the event that the court finds the costs excessive and charged in bad faith by the witness, the court shall order the witness to remit the full amount of the costs demanded and collected, or excuse the requesting party from any payment of costs charged but not collected, and the court shall also order the witness to pay the requesting party the amount of the reasonable expenses incurred in obtaining the order, including attorney's fees." Under the statute, an award of expenses and attorney's fees against the witness requires a finding that the charges were excessive and "in bad faith." We find no basis in the record for attributing bad faith to General Dynamics. As the trial court noted, the statute and its predecessor were new and there was no case law interpreting them. (See also 13 Pacific L.J., *supra,* 625, 629, 630, fn. 9.) Husband is not entitled under the statute to an award against General Dynamics of his attorney's fees.[6]

The order is reversed and the trial court is directed to enter an order pursuant to Evidence Code section 1563, subdivision (b)(4), reducing the charge by $40. Costs on these appeals are awarded to appellant Roger Gene Stephens.

Feinerman, P. J., and Hastings, J., concurred.

---

[6]Our disposition of the main issue of statutory interpretation renders moot General Dynamics' claim for attorneys' fees.